56 CCPA
**Application of Arthur N. ARAKELIAN.**
**Patent Appeal No. 8119.**

United States Court of Customs
and Patent Appeals.
May 15, 1969.

---

Roger Y. K. Hsu, William H. Pittman, Oberlin, Maky Donnelly & Renner, Cleveland, Ohio, attorneys of record, for appellant. Donald D. Jeffery, Cleveland, Ohio, of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 2–9 and 13 of appellant's application[1] under 35 U.S.C. § 103 as being obvious over Higgins[2] in view of Freuler.[3] Claim 15 has been allowed.

## THE INVENTION

This invention relates to a liquid concentrate which may be blended with lubricating oils to improve various qualities thereof. Appellant acknowledges that it has long been known to add lead salts of organic phosphorodithioic acids to lubricating oils to inhibit corrosion and oxidation and further that, to facilitate easy mixing with the lubricating oil, it has been desired to supply the salts to the lubricant compounders in the form of liquid concentrates containing the phosphorodithioate salts dissolved in high concentration in oil. Appellant indicates that problems sometimes arise because of the tendency of the lead phosphorodithioate salts to crystallize or solidify when the concentrate is left

standing. Appellant has discovered that these problems in the concentrate may be avoided by the use of particular lead salts of phosphorodithioic acids having the

structure in which $R_1$ and $R_2$ are selected from the group consisting of lower molecular weight primary aliphatic radicals having less than 5 carbon atoms and higher molecular weight primary aliphatic radicals having 5 to 18 carbon atoms, with the lead salt mixture containing both lower molecular weight aliphatic radicals and higher molecular weight aliphatic radicals and being characterized by the presence therein of about 8.5 to 9.8 carbon atoms per atom of phosphorus.

The patentability of claim 2 (reproduced as follows) is determinative of all the claims on appeal, this being the position taken by the Patent Office and not controverted by appellant:

2. A clear, free-flowing solution in an oil of from about 20 to about 80 per cent by weight of the lead salts of a mixture of phosphorodithioic acids having the structure

A

$$\begin{array}{ccc} R_1O & & S \\ & \diagdown \;\; \diagup\!\!\!\!\diagup & \\ & P & \\ & \diagup \;\; \diagdown & \\ R_2O & & SH \end{array}$$

in which $R_1$ and $R_2$ are selected from the group consisting of lower molecular weight primary aliphatic radicals having less than five carbon atoms and higher molecular weight primary aliphatic radicals having from about 5 to about 18 carbon atoms, said lead salt

1. Serial No. 256,108, filed February 4, 1963, for "Lubricant Improving Agent."

2. U. S. Patent 3,000,822, issued September 19, 1961.

3. U. S. Patent 2,364,283, issued December 5, 1944.

mixture containing both lower molecular weight aliphatic radicals and higher molecular weight aliphatic radicals and being characterized by the presence therein of from about 8.5 to about 9.8 carbon atoms per atom of phosphorus.

## THE REFERENCES

Higgins discloses an additive intended to impart similar beneficial qualities to lubricating oil, comprising zinc salts of a mixture of phosphorodithioic acids having the structure

B

$$\begin{array}{c} R_1 O \qquad S \\ \diagdown \quad \diagup\!\!\diagup \\ P \\ \diagup \quad \diagdown \\ R_2 O \qquad SH \end{array}$$

in which $R_1$ and $R_2$ are the same or different primary aliphatic hydrocarbon radicals selected from the class consisting of lower molecular weight radicals having less than five carbon atoms and higher molecular weight radicals having at least five carbon atoms. While Higgins does not teach specifically that the ratio of carbon atoms to phosphorus atoms must be 8.5–9.8:1, the products shown in every one of the examples are within this range. Thus, examples 1–3 show a ratio of 8.5:1, examples 4–7 show 9:1 and example 8 shows 8.7:1.

Freuler is cited by the examiner for a teaching that zinc and lead salts of particular dialkyl dithiophosphoric acids differing from those of Higgins and appellant are useful as lubricating oil additives. For example, Freuler states:

> A specific example of this invention which is particularly valuable as a high film strength and oiliness agent, and which also imparts some oxidation inhibiting value to oils compounded therewith, is zinc di-octyl thiophosphate. The corresponding lead salt is also useful.

## THE REJECTION

The examiner's rejection under 35 U.S.C. § 103 was based on the premise that Higgins discloses the use of zinc salts corresponding to the lead salts employed by appellant and that it would be obvious to one skilled in the art to substitute the corresponding lead salts in view of Freuler's teaching of the "functional equivalence" of zinc and lead salts of other dialkyl dithiophosphoric acids as lubricant additives. The board, in affirming the examiner, stated:

> Higgins et al. clearly show a compound similar to that claimed except that the metal is zinc and not lead. However, since zinc and lead thiophosophates [sic] are adequately soluble in mineral and impart high film strength thereto as shown by Freuler, page 3, lines 7 through 19 and lines 28 and 29, it would be obvious to one skilled in the art to use lead instead of zinc in the phosphorodithioate inhibitors shown by Higgins et al.

## OPINION

Here, the solicitor discusses the Higgins' disclosure and concludes that the Higgins compounds may be characterized as the zinc analogs of the lead phosphorodithioate salts of appellant. The solicitor also indicates that the Higgins examples show the use of Higgins' analogous zinc salts in solutions in a range from 50% to 75% by weight and, in addition, points out that the product of each of Higgins' eight examples is characterized by a carbon to phosphorus atom ratio within the range recited in claim 2. Having thus set the background of similarity between the claimed compositions of appellant and the solutions of salts in oil disclosed in Higgins, the solicitor then poses, we believe correctly, the determinative issue here:

> What the case boils down to is this. Appellant has discovered that the lead analogs of Higgins' zinc salts can form a clear and free-flowing solution in oil, even when used in high concentrations. Higgins' zinc salts also have

that capability. Can such discovery, as recited in illustrative claim 2, be properly held unobvious under 35 U.S.C. 103, notwithstanding Freuler's teaching that for his purposes, which include inhibition of corrosion, his lead and zinc thiophosphates are equivalents * * *.

On the record here, we agree with the Patent Office that the claimed subject matter cannot be held unobvious. As to claim 13 which recites a concentration of salt in oil from 0.1 to about 20%, we consider the rejection to be quite clearly correct in view of Freuler's explicit teaching of the use of his additive in the same range [4] coupled with Freuler's teaching that lead and zinc salts are equally useful as lubricant additives.

As to the remaining claims, in which the concentration of lead salt is recited as from about 20% to about 80% (in claim 12, about 40% to about 60%), it is appellant's contention that any equivalency between the lead and zinc salts of phosphorodithioic acid which might be inferred from Freuler would be merely for the purpose of imparting certain antioxidant and corrosion-inhibiting properties to lubricants, and that there is no suggestion of equivalency with respect to the *oil solubility* characteristics which is the heart of appellant's invention. Further, appellant asserts, it would be unobvious to employ, in oil concentrates, lead salts corresponding to the zinc salts of Higgins in view of the lower solubility in oil of certain other lead salts of phosphorodithioic acids as compared with the corresponding zinc salts, as shown by an affidavit filed by appellant. The affidavit compares pairs of samples of various lead and zinc phosphorodithioates in oil and shows that for each pair of samples tested the lead salt exhibited much inferior solubility.

The solicitor, however, is unimpressed by the results shown in the affidavit observing that none of the phosphorodithioate salts selected for comparison in the affidavit comes within the classes of phosphorodithioate salts involved in the respective inventions of either Higgins or appellant. But implicit in that observation is the suggestion that appellant should have made a "comparison of the results of the invention with the results of the invention." In re Chapman, 357 F.2d 418, 53 CCPA 978 (1966). What is in point, it seems to us, is the fact that the affidavit, purporting to show that certain lead salts of phosphorodithioic acid may be less soluble than the corresponding zinc salts, employs examples in which, in each case, the concentration of the lead salts found not to be soluble is at least 49%. The concentration of the salt recited in the rejected claims (other than claim 13), however, ranges from about 20–80% or 40–60%. The affidavit does not establish, therefore, that lead salts of phosphorodithioic acids in general are not soluble at concentrations of from 20 to near 49%—the lower portion of the claimed range lying below 49%. In passing, we also draw attention to Freuler's teaching, previously noted, that his particular phosphorodithioic acid salts, including lead and zinc salts, may be added to oil up to at least the lower limit of about 20% recited by appellant. Thus we do not consider the affidavit to be persuasive evidence of the possible insolubility of the tested lead salts of phosphorodithioic acid at concentrations of 20%–48%, concentrations within the scope of the claims. We cannot find sufficient evidence in this record that one skilled in the art, aware of the high solubility of the zinc phosphorodithioate oil additives of Higgins and led by the teachings of Freuler to substitute lead for zinc in

---

4. For example, Freuler states:

In referring to the content of 1.0% of the salt in the lubricating oil, it is not intended to convey the idea that this amount is critical. Varying proportions may be employed in mineral lubricating oils between any lower range sufficient

to produce the desired increased film strength, or stabilization, or oxidation control, for example, 0.1%, up to a figure such as 20% beyond which added material produces no appreciable increased effect. * * *

the phosphorodithioate salts here involved, would consider it unobvious that similar high solubility should be present in the analogous lead salts, at least to the extent broadly recited in the claims.

The decision is affirmed.

Affirmed.